Case No. 06-35333

_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

SARAH GREENE, et al.,

Plaintiffs/Appellants,

vs.

BOB CAMRETA, et al.,

Defendants/Appellees.

_____

## MOTION FOR LEAVE TO FILE BRIEF AND PROPOSED BRIEF
## OF AMICUS CURIAE CALIFORNIA STATE ASSOCIATION OF
## COUNTIES IN SUPPORT OF DEFENDANTS/APPELLEES
## PETITION FOR REHEARING AND REHEARING EN BANC

_____

On Appeal from the United States District Court
for the District of Oregon
(U.S. District Court No. CV-05-06047-AA)
The Honorable Ann L. Aiken

JENNIFER B. HENNING, SBN 193915
Litigation Counsel
California State Association of Counties
1100 K Street, Suite 101
Sacramento, California  95814
Telephone: (916) 327-7535
Facsimile: (916) 443-8867

Attorney for Amicus Curiae
California State Association of Counties

## MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE

Amicus Curiae, California State Association of Counties ("CSAC"), respectfully moves this Court, pursuant to Federal Rule of Appellate Procedure 29, for leave to file the brief submitted with this motion in support of Defendants and Appellees Bob Camreta, James Alford and Deschutes County.

## I.    INTEREST OF AMICUS CURIAE

The California State Association of Counties (CSAC) is a non-profit corporation.  The membership consists of the 58 California counties.  CSAC sponsors a Litigation Coordination Program, which is administered by the County Counsels' Association of California and is overseen by the Association's Litigation Overview Committee, comprised of county counsels throughout the state.  The Litigation Overview Committee monitors litigation of concern to counties statewide and has determined that this case is a matter affecting all counties.

CSAC is interested in this case because California law requires child protective agencies and county social workers to investigate allegations of child abuse.  The opinion of the panel as it relates to interviews of children at school without probable cause, a warrant, exigent circumstances or parental consent, if permitted to stand, would severely impact the ability of all counties to conduct child abuse investigations.  It places children at increased risk.

Further, the general liability exposure of counties, particularly of our various child protective agencies and law enforcement agencies, will be significantly affected by this Court's ruling regarding the Fourth Amendment constitutionality of school interviews.  As such, Amicus Curiae has a significant interest in the decision of this Court with regard to a possible *en banc* hearing.

## II.    Amicus Curiae's Brief

Amicus Curiae desires to file this brief in order to articulate and clarify the issues and law surrounding this Court's deliberations and the potential limitations and burden it presents to the counties' child protective agencies and law enforcement operations.  Amicus' counsel is familiar with the draft brief of Defendant/Appellee Bob Camreta in this case and has reviewed the Petition for Rehearing and Rehearing En Banc.  The amicus brief enclosed herewith may further develop some arguments, but primarily refers this Court to some cases not otherwise cited by the Petitioner and provides the Court with the public policy concerns that are of particular interest to CSAC's member counties.

**III.    Conclusion**

Amicus Curiae respectfully moves that this Court grant leave to file the

Brief of Amicus Curiae submitted with this motion.


DATED:      February 5, 2010

Respectfully submitted,

CALIFORNIA STATE ASSOCIATION OF COUNTIES


By    s/Jennifer B. Henning
JENNIFER B. HENNING, SBN 193915
Litigation Counsel
California State Association of Counties

C.A. No. 06-35333

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

SARAH GREENE, personally and as next friend for
S.G., a minor, and K.G., a minor,

Plaintiff/Appellant,

v.

BOB CAMRETA; DESCHUTES COUNTY; JAMES ALFORD,
Deschutes County Deputy Sheriff; BEND LAPINE SCHOOL
DISTRICT; TERRY FRIESEN,

Defendants/Appellees.

_____

Appeal from the United States District Court
for the District of Oregon

Ann L. Aiken, District Judge, Presiding
(DC No. CV-05-06047-AA, Portland, Oregon)
_____

## BRIEF OF AMICUS CURIAE IN SUPPORT OF
## DEFENDANT/APPELLEES' PETITION FOR
## REHEARING AND FOR REHEARING _EN BANC_

JENNIFER B. HENNING, Litigation Counsel
(State Bar No. 193915)
1100 K Street, Suite #101
Sacramento, California  95814
(916) 327-7535

Attorneys for _Amicus Curiae_
California State Association of Counties

# TOPICAL INDEX

Page(s)

TABLE OF AUTHORITIES ................................................................. ii

INTEREST OF AMICUS CURIAE ...................................................... 1

INTRODUCTION ................................................................................ 1

ARGUMENT

I.     REHEARING IS NEEDED TO CLARIFY THE
       PARAMETERS OF THE PANEL'S DECISION
       REGARDING SCHOOL INTERVIEWS .................................... 3

II.    REHEARING EN BANC IS NEEDED BECAUSE
       THE PANEL'S DECISION CONFLICTS WITH OTHER
       CIRCUITS DECISIONS BY REJECTING THE SPECIAL
       NEEDS DOCTRINE AND ALSO DEPARTS FROM
       OTHER CIRCUITS WHERE SCHOOL INTERVIEWS ARE
       CONSTITUTIONALLY PERMISSIBLE IF REASONABLE ... 6

       A.     The Conflicts. ................................................................. 6

       B.     The Reasonable Belief Standard is Appropriate
              Because of the Limited Nature of the Interview
              Compared With the Risk of Harm to the Child ................ 7

III.   REHEARING EN BANC IS NEEDED BECAUSE THE
       PANEL'S DECISION CONFLICTS WITH DECISIONS
       OF THE UNITED STATES SUPREME COURT ON
       ANALOGOUS ISSUES ............................................................. 13

CONCLUSION     ................................................................................. 16

CERTIFICATE OF COMPLIANCE ...................................................... 18

STATEMENT OF RELATED CASES ................................................. 19

CERTIFICATE OF SERVICE………………………………………20

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Williams*, 407 U.S. 143 (1972)...............................................14

*Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999) ................................8

*Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007) ...........................14, 15

*Darryl H. v. Coler*, 801 F.2d 893 (7th Cir. 1986)..................................10

*Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003)...............................................4

*Gates v. Texas Dept. of Protective and Regulatory Services*,
    537 F.3d 404 (5th Cir. 2008).......................................................2, 6, 7, 11,
                                                                                        12

*Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009)...............................4, 5, 6, 8, 10

*Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009).....9

*Illinois v. Lidster*, 540 U.S. 419 (2004) ..................................................3, 15, 16

*Illinois v. McArthur*, 531 U.S. 326 (2001)...............................................15, 16

*Michael C.v. Cresbach*, 526 F.3d 1008 (7th Cir. 2008) .........................4

*People v. Stockton Pregnancy Control Med. Clinic*,
    203 Cal. App. 3d 225 (1988) ...............................................................10

*Santosky v. Kramer*, 455 U.S. 745 (1982) ..............................................10

*Tenenbaum v. Williams*, 193 F.3d 581 (2nd Cir. 1999) ..........................10

*Terry v. Ohio*, 392 U.S. 1 (1968) ..........................................................3, 7, 8, 12,
                                                                                        13, 15, 16

*United States v. Bradley*, 321 F.3d 1212 (9th Cir. 2003) .......................13

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u> [cont'd]

*United States v. Cervantes*, 219 F.3d 882 (9th Cir. 2000) ...................... 13

*United States v. Place*, 462 U.S. 696 (1983) ......................................... 8

*United States v. Sokolow*, 490 U.S. 1 (1989) ........................................ 8

*Veronia Sch. Dist. v. Acton*, 515 U.S. 646 (1995) ................................. 9

*Wyman v. James*, 400 U.S. 309 (1971) ................................................. 9

<u>Statute</u>

Federal

Federal Rules of Appellate Procedure

  Rule 35(b)(1)(A) ........................................................... 3
  Rule 35(b)(1)(B) ........................................................ 2, 7

Title 42, United States Code

  Section 5101 ................................................................. 9

State

Penal Code section 11164 ..................................................... 9

<u>Other</u>

Circuit Rule 35-1   ............................................................... 2, 7

Fourth Amendment to the United States Constitution ........................... passim

## INTEREST OF AMICUS CURIAE

The California State Association of Counties (CSAC) respectfully submits this Amicus Curiae Brief in support of the Petition for Rehearing and Rehearing En Banc filed by Bob Camreta, James Alford, and Deschutes County.  CSAC is a non-profit organization whose membership consists of the fifty-eight California counties.  CSAC sponsors a Litigation Coordination Program which is administered by the Association's Litigation Overview Committee, comprised of County Counsels throughout the state.  The Litigation Overview Committee monitors litigation of concern to counties statewide and has determined that this case involves a matter affecting all California counties.

## INTRODUCTION

Child abuse and neglect is a national problem of tremendous proportions. Every school day thousands of children throughout this nation are interviewed in their schools regarding possible abuse and neglect in their homes.  These interviews are often conducted under the authority of state laws that recognize abused and neglected children are most likely to answer interview questions honestly when they feel safe, such as in their schools, that interviewing children at their schools does not involve the privacy concerns involved with trying to interview the children in their homes, and that the need to protect children from abuse and neglect is a compelling state and national interest.

No court has held that school interviews automatically constitute a seizure or that they are necessarily interrogations, particularly when conducted by social workers in public schools for the purpose of child protection.  Nevertheless, through its misapplication of other federal court decisions and the language used in the panel's decision, the opinion may be misconstrued to prohibit all school interviews and place an unreasonable and dangerous limitation on constitutionally appropriate child welfare investigations.  Rehearing is needed to clarify this issue of exceptional importance to the protection of children.  Fed. R. App. P. 35(b)(1)(B).

Moreover, even when the manner and purpose of a particular school interview goes beyond what is required for child protection such that it amounts to a seizure under the Fourth Amendment, as found by the district court and not challenged by the parties in this case, the panel's decision that traditional Fourth Amendment requirements apply conflicts with decisions of other circuits, including *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404 (5th Cir. 2008).  These other decisions impose a reasonableness standard for evaluating the constitutionality of such interviews.  As such, rehearing *en banc* is needed to ensure national uniformity on this issue of exceptional importance.  Fed. R. App. P. 35(b)(1)(B); Circuit Rule 35-1.

Finally, rehearing *en banc* is needed because the panel's opinion conflicts

with decisions of the Supreme Court, particularly *Terry v. Ohio*, 392 U.S. 1 (1968), which the panel erroneously concluded did not apply, and *Illinois v. Lidster*, 540 U.S. 419 (2004), which the panel did not consider. Both *Terry* and *Lidster* provide the rationale for the application of a reasonableness standard to school interviews in circumstances in which the interview exceeds what is needed for child protection and thus falls within the Fourth Amendment. The panel did not agree. Fed. R. App. P. 35(b)(1)(A).

The petition for rehearing focuses solely on the panel's substantive Fourth Amendment analysis. CSAC's support for rehearing is similarly limited to that issue. It respectfully submits that on this issue the panel's decision presents a matter of exceptional importance on which there is a need for national uniformity justifying rehearing *en banc*.

## ARGUMENT

### I

### REHEARING IS NEEDED TO CLARIFY THE PARAMETERS OF THE PANEL'S DECISION REGARDING SCHOOL INTERVIEWS

Interviewing children at school is a primary tool for child welfare investigators carrying out their statutory responsibility to protect children through investigating possible incidents of child abuse and neglect. In California the vast majority of school interviews in child protection cases are done solely by social

3

workers for the limited purpose of child welfare.  It is not surprising that no court

has held that such school interviews automatically constitute a seizure within the

Fourth Amendment, since limited school interviews by child welfare workers fall

short of a search.  *Michael C. v. Gresbach*, 526 F.3d 1008, 1016 (7th Cir. 2008).

The panel in this case did not hold otherwise.  Indeed, that issue was not addressed.

*Greene v. Camreta*, 588 F.3d  1011, 1027 (9th Cir. 2009).  Nevertheless, it

misconstrued cases from other circuits and used certain language within its

decision that may result in the opinion being misapplied throughout the circuit,

especially in California.

  First, the panel characterized the Seventh Circuit case of *Doe v. Heck*, 327

F.3d 492 (7th Cir. 2003), as a "very similar case" in terms of whether the school

interview was a seizure subject to Fourth Amendment analysis.  *Greene*, 588 F.3d

at 1022.  However, *Doe v. Heck* was a case involving the interviewing of children

at a private school not a public school.  It involved allegations that school officials,

not parents, used corporal punishment.  School officials had objected to the

interviews.  The court recognized parents have an expectation of privacy in

sending their children to a private school that they do not have when children

attend public school.  *Doe v. Heck*, 327 F.3d at 511-513.  The Seventh Circuit

clearly limited *Doe v. Heck* to private school cases.  *Michael C. v. Gresbach*, 526

F.3d at 1011.  But the panel's inaccurate characterization of *Doe v. Heck* as being

very similar to this case could lead to the unintended perception that the decision applies to a far broader spectrum of cases than it actually does.

Second, the panel made an incorrect assumption when it wrote:

> The facts of this case do not require us to decide whether the "special needs" doctrine would apply to an in-school ***interrogation*** of a child where there is no direct law enforcement purpose and no involvement of law enforcement personnel.

*Greene*, 588 F.3d at 1027, fn. 12 (italics added).

This language mischaracterizes a social worker's limited school interview for the purpose of child welfare as an "interrogation." Moreover, the panel's statement that it did not need to decide whether a special needs exception should apply to such limited interviews presupposes application of the Fourth Amendment. Although only dicta, CSAC submits this language can create a misapprehension of the law, particularly in California where school interviews solely by social workers for child welfare purposes occur on a daily basis, thereby placing unreasonable restrictions on what is a constitutionally appropriate state practice. This misapprehension is exacerbated by the panel's cautionary language that qualified immunity might not apply to future, but unspecified, interviews. *Greene* at 1033. Rehearing is needed to modify and clarify the decision.

**II**

**REHEARING EN BANC IS NEEDED BECAUSE THE PANEL'S DECISION CONFLICTS WITH OTHER CIRCUITS REJECTING THE SPECIAL NEEDS DOCTRINE AND ALSO DEPARTS FROM OTHER CIRCUITS WHERE SCHOOL INTERVIEWS ARE CONSTITUTIONALLY PERMISSIBLE IF REASONABLE**

**A.    The Conflicts**.

The panel recognized the federal district and circuit courts are split on the applicability of the "special needs" doctrine to investigations of child abuse. *Greene*, 588 F.3d at 1026, fn. 11.  Some circuits apply the special needs analysis to child protection investigations.  Both the Fifth and Ninth Circuits hold the special needs analysis is inapplicable.  *Id*. 1023-29; and *Gates*, 537 F.3d at 423-424 (5th Cir. 2008).  The panel's decision perpetuates and exacerbates this split by applying it to a new area: school interviews.

Further, the panel's decision unnecessarily creates an additional split, this time between the Ninth and Fifth Circuits, by diverging from *Gates*.  The *Gates* decision recognized that "[t]emporarily seizing a child from a public school in order to interview him in a safe place is decidedly different than seizing a child from his home for the purpose of removing him from allegedly abusive parents." *Gates*, 537 F.3d at 432.  Although applying "traditional Fourth Amendment law," the *Gates* court adopted a standard less than probable cause for the seizure and removal of a child for a suspected child abuse interview.  *Id*. at 433.  For the

6

interview, *Gates* applied the reasonable suspicion standard from *Terry v. Ohio*, 392 U.S. 1 (1968), even where the child was taken from the school to a central location for the interview.  *Gates*, 537 F.3d at 434. [1]

Here the panel required probable cause and a warrant for the child's interview at a public school, placing this circuit in further conflict with other circuits and justifying rehearing *en banc* to determine whether it should be in conflict with other circuits on this issue of exceptional importance.  Fed. R. App. P. 35(b)(1)(B); Circuit Rule 35-1.  CSAC submits the Court should eliminate that conflict by adopting the more appropriate standard imposed by other districts on this issue.

### B.     The Reasonable Belief Standard is Appropriate Because of the Limited Nature of the Interview Compared with the Risk of Harm to the Child.

The seminal question presented is whether an interview at school of a possible child abuse victim is always so intrusive that it automatically amounts to a seizure violative of the child's Fourth Amendment rights.  The panel held that the decision to detain and question S.G. at school in the absence of a warrant or a court order, exigent circumstances, or parental consent violated traditional Fourth

---

[1] Specifically, the *Gates* standard is that "before a social worker can remove a child from a public school for the purpose of interviewing him in a central location without a court order, the social worker must have a reasonable belief that the child has been abused and probably will suffer further abuse upon his return home at the end of the school day." *Gates*, 537 F.3d at 433.

Amendment requirements.  *Greene* at 1030.  The same standard was applied to

seizures at home in *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999).  (*Greene* at

1026.)  However, *Greene* lacks a complete Fourth Amendment analysis that

recognizes additional circumstances where it is reasonable to question a suspected

abuse victim such as S.G. at a public school.

There are three types of police/citizen encounters: consensual encounters,

investigative stops, and arrests.  An investigative stop, also referred to as a *Terry*

stop, does not require probable cause.  *Terry v. Ohio*, 392 U.S. 1, *supra*.  "The

police can stop and briefly detain a person for investigative purposes if the officer

has a reasonable suspicion supported by articulable facts that criminal activity 'may

be afoot,' even if the officer lacks probable cause."  *United States v. Sokolow*, 490

U.S. 1, 7 (1989), *quoting Terry*, 392 U.S. at 30.  Thus, even in criminal

investigations, law enforcement authorities are not constrained to investigate only

when they have a warrant or consent.

The Fourth Amendment protects against unreasonable searches and seizures.

Where there has been a seizure, the next question is whether it was unreasonable.

The reasonableness of the seizure depends on balancing the nature and quality of

the intrusion on the individual's Fourth Amendment interests against the

importance of the governmental interests that justify the intrusion.  *United States v.*

*Place*, 462 U.S. 696, 703 (1983).  The panel's blanket rule against school

interviews fails to account for differences in the intrusion's scope, or balance the intrusion with its purpose.

Children's rights to freely move about, especially in a public school, are not as extensive as adults' rights. The Fourth Amendment rights of children "are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the school's custodial and tutelary responsibility for children." *Veronia Sch. Dist. v. Acton*, 515 U.S. 646, 656 (1995). The Fourth Amendment is not inapplicable, but students have a lesser expectation of privacy. *See Id.* at 656-57. Consequently, the detention and interview of a public school student is less intrusive as his or her freedom is relatively limited.

Here, the nature and scope of the intrusion was inconsequential for S.G. compared with the purpose of protecting her against an abhorrent act. The Supreme Court recognized that the health, safety, and welfare of children is important. *Wyman v. James*, 400 U.S. 309, 318 (1971) (referring to a dependent child's needs with respect to AFDC benefits as "paramount" and stating "[t]here is no more worthy object of the public's concern"). This court has considered California's Child Abuse and Neglect Reporting Act,[2] and noted that child abuse prevention is a "vital interest." *Humphries v. County of Los Angeles*, 554 F.3d

---

[2] California Penal Code section 11164 et seq., which is the state's equivalent of the federal Child Abuse Protection and Treatment Act, 42 U.S.C. section 5101 et seq.

1170, 1193-94 (9th Cir. 2009).  *See Santosky v. Kramer*, 455 U.S. 745, 766 (1982);

*People v. Stockton Pregnancy Control Med. Clinic*, 203 Cal. App. 3d 225 (1988)

(finding that detecting and preventing child abuse are a "compelling" government

interest.)  The panel's decision recognizes that "society has a compelling interest in

protecting its most vulnerable members from abuse within their home."  *Greene*,

588 F.3d at 1015.  The interview's purpose – especially for the child – is critically

important.

Other circuits have grappled with this balancing test.  An exigent

circumstances analysis was employed for removing a child from school to conduct

a physical examination for evidence of sexual abuse.  *Tenenbaum v. Williams*, 193

F.3d 581 (2d Cir. 1999).  The Second Circuit, however, without elaboration also

suggested that an exigent circumstances analysis might not always be appropriate.

*Id*. at 604.  Further, the Seventh Circuit, in a public school setting, held that even

disrobing for body searches for evidence of physical abuse need only meet a

reasonableness standard.  *Darryl H. v. Coler*, 801 F.2d 893, 902-03 (7th Cir. 1986).

A child's capacity for a consensual encounter with state officials can be

limited or even nonexistent.  Where the child lacks capacity or if the parent

withholds consent, the panel's decision means the official cannot interview the

child victim without probable cause.  If probable cause cannot be established

because the child is the only witness, then the government's vital and compelling

interest in detecting and preventing child abuse is defeated.

The Fifth Circuit in *Gates*, 537 F.3d 404, provides the appropriate analytical framework to weigh the nature and scope of the intrusion and the purpose of the school interview. The *Gates* court considered Fourth Amendment challenges to the questioning of children in several settings involving the home, public school and a YMCA. It applied Fourth Amendment analysis to the school incident and explained:

> Given the differences in the freedoms enjoyed by children inside a public school, the nature and scope of the seizures at issue, and the need to promptly investigate and act upon allegations of child abuse, ***we believe an exigent circumstances analysis sets too high a threshold for the state to overcome when investigating allegations of child abuse***. However, removing a child from a public school solely on the basis of an anonymous report is not a constitutional solution either. The answer lies somewhere in between.

> … Just as "an anonymous tip, standing alone, is rarely sufficient to provide probable cause for a warrant,' [citation omitted], an anonymous tip regarding child abuse will rarely be sufficient to justify the seizure of a child. However, anonymous tips that have been independently corroborated by government officials may provide sufficient grounds to seize a child. [Citation and note about investigative stops omitted.] Thus, before seizing a child on the basis of an anonymous tip, TDPRS [defendant] must sufficiently corroborate the tip by initiating its own investigation. This might involve a ***preliminary interview of the child***, his teachers, or peers, or perhaps a ***visual inspection of any injuries*** that can be seen without the removal of the child's clothing.

*Id.* at 433 (emphasis added).

As previously noted, *Gates* held that a social worker can remove a student to interview the child in a central location without a court order so long as the social worker had a reasonable belief the child was abused and will probably suffer abuse when he returns home. "This is a lower standard than exigent circumstances in that it does not require that the child be in 'imminent danger' of abuse." *Gates*, 537 F.3d at 433.

Another incident in *Gates* at the YMCA occurred during a home/private school function. There, sheriff's deputies, unbeknownst to the caretaker, took two children into a separate room to interview them about allegations of abuse. The court found the intrusion was minor and of short duration. "This was very similar to an investigatory detention, as approved in *Terry v. Ohio* [citation omitted] in that it was supported by reasonable suspicion and was no more intrusive than necessary. There is nothing to suggest the Fort Bend deputies stepped outside their constitutional bounds." *Gates*, 537 F.3d at 434.

This Court should also employ the *Terry* analysis and adopt a similar standard.

/ / /

/ / /

/ / /

/ / /

12

### III

### REHEARING EN BANC IS NEEDED BECAUSE THE PANEL'S DECISION CONFLICTS WITH DECISIONS OF THE UNITED STATES SUPREME COURT ON ANALOGOUS ISSUES

The *Terry* analysis for an investigative stop based on reasonable suspicion that criminal activity is afoot is analogous even though *Terry* involved stopping a suspect and not a victim. In balancing the intrusion with the state interest, the *Terry* rationale also applies to child protective agencies when they seek to conduct school interviews for several reasons. The primary purpose is the safety and protection of the child; the child is not a criminal suspect. The purpose may also be viewed in light of other analogous cases involving emergency aid or community caretaker standards where a reasonable belief would justify the intrusion.[3] The child may be the only source of information. The preliminary interview need not be invasive. The interview should not proceed if the minor refuses. After balancing the intrusion of a preliminary interview with the safety of the child, something less than a reasonable suspicion is the appropriate standard. From the panel's decision, it seems the interests of the suspect – through the ability to control access to the child -- trump the child's protection against criminal acts and require the social worker to abandon the investigation and walk away.

---

[3] *See United States v. Cervantes*, 219 F.3d 882, 888-90 (9th Cir. 2000); *United States v. Bradley*, 321 F.3d 1212, 1214 (9th Cir. 2003).

A social worker who reasonably suspects that a child at a public school has been abused but lacks probable cause should not be compelled to simply walk away without interviewing the child where there are no other investigative leads. Even as applied to law enforcement, the Supreme Court said that "[the] Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972).

The Tenth Circuit provides another example of the dilemma. In *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007) (*en banc*), law enforcement infringed the constitutional rights of a suspect when they failed to interview the complaining minor witness and proceeded to arrest the suspect without probable cause. The arrest was not based on direct information, but a telephone call from a hospital advising that the minor said the suspect molested her. The court implicitly rejected the notion that the officers could not speak with the minor. "[W]itnesses were *readily available* for interviews, physical evidence was available, and a medical diagnosis was forthcoming. Defendants, however, did not: (1) *interview the girl*, her mother, the nurse, or the doctor; (2) *inspect the girl's clothing* for possible signs of sexual assault; or (3) wait for the preliminary report from the doctor." *Id.* at 1117 (italics added). Sometimes it is essential to interview the child as she is

14

often the only witness.  In *Cortez*, the suspect's rights were violated precisely because the police failed to do what the panel proscribes—interview the child without a warrant.

In many cases of abuse, it may be impossible to obtain consent to question the child.  Exigent circumstances may not be apparent.  Because the child may be the only source of information about the abuse and probable cause cannot be established without interviewing the child, school interviews should be sanctioned where reasonable suspicion exists and may afford the only protection for the suspected victim.  The suspected abuser should not have the ability to prevent inquiry about the safety of the victim or thwart or prevent an investigation of the crime where the abuser victimized his or her own child rather than another's.

The Supreme Court has made it clear that "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur*, 531 U.S. 326, 330-31 (2001).  For example, in *Illinois v. Lidster*, 540 U.S. 419 (2004), the *Terry* standard was applied to allow suspicionless stops of  motorists for questioning to identify potential witnesses to a crime.  The *Lidster* court balanced the intrusion with its purpose and found the traffic stops minimally interfered with the public's liberty compared to the relevant public concern in solving a homicide.

*Id.* at 427-28.  The motorists were possible witnesses - not suspects - just like S.G. and other students who may be interviewed at school about abuse.

The *Terry* standard should be applied to investigations of appropriate child abuse cases in the Ninth Circuit.  Where a social worker seeks to conduct a reasonable interview of a suspected child abuse victim at school, all three of the justifications specified by *Illinois v. McArthur*, *supra*, are present:

1) The social worker has a special child protective/law enforcement need to investigate the welfare of a potentially abused child;

2) The child is at a public school, where there is an inherently diminished expectation of privacy for both the child and the parent; and

3) A reasonable interview will be minimally intrusive and short in duration.

## CONCLUSION

CSAC asks the Court to grant the Petition for Rehearing and Rehearing *En Banc* because Fourth Amendment protections and standards for school searches and seizures, which are the subject of the panel's holding, present questions of exceptional importance and require national uniformity.  The panel's decision creates an additional split among the circuits as to the standard for government agents seeking to interview a child who is the subject of a suspected child abuse investigation.

The panel's Fourth Amendment balancing of the nature of the intrusion with the school interview's purpose was adversely affected by a misapprehension.  The panel incorrectly assumed that the child's rights in a suspected child abuse case will always align with the parental, ignoring that the rights of the child align with the state's interest in protecting the child from abuse in a significant number of cases.  The decision upsets long-standing state and federal child protection statutes and regulations for investigation of suspected child abuse and places the most vulnerable members of society, our children, at increased risk for abuse and neglect.

For all of the foregoing reasons, the Court should review the panel's decision *en banc*.

DATED:  February 5, 2010    Respectfully submitted,

CALIFORNIA STATE ASSOCIATION
OF COUNTIES

By s/Jennifer B. Henning
    JENNIFER B. HENNING
    Litigation Counsel
    California State Bar Number 193915

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure, rule 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached Appellees' Brief is double-spaced, typed in Times New Roman proportionally spaced 14-point typeface, and the brief contains 3,676 words of text as counted by the Microsoft Word 2003 word-processing program used to generate the brief.

DATED: February 5, 2010      CALIFORNIA STATE ASSOCIATION
OF COUNSEL

By  s/ Jennifer B. Henning
    JENNIFER B. HENNING
    Litigation Counsel
    State Bar Number 193915

## STATEMENT OF RELATED CASES

Amicus Curiae, California State Association of Counties, is unaware of any pending related cases before this Court as defined in Ninth Circuit Rule 28-2.6.

DATED:  February 5, 2010     CALIFORNIA STATE ASSOCIATION
OF COUNTIES


By  s/ Jennifer B. Henning_____
JENNIFER B. HENNING
Litigation Counsel
State Bar Number 193915

UNITES STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CERTIFICATE OF SERVICE BY MAIL

*GREENE v. CAMRETA*
Case No. 06-35333/ U.S. District Court Case No. CV-05-06047-AA

I hereby certify that on February 5, 2010, I electronically filed the foregoing **MOTION FOR LEAVE TO FILE BRIEF AND PROPOSED BRIEF OF AMICUS CURIAE CALIFORNIA STATE ASSOCIATION OF COUNTIES IN SUPPORT OF DEFENDANTS/APPELLEES PETITION FOR REHEARING AND REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participant(s):

Mark H. Wagner                          Mark P. Amberg
Hoffman, Hart & Wagner, LLP             Deschutes County Legal Counsel
Suite 2000                              Suite 200
1000 SW Broadway                        1300 NW Wall Street
Portland, OR  97205                     Bend, OR  97701

Richard D. Wasserman
Office of the Oregon Attorney General (Salem)
400 Justice Building
1162 Court Street, NE
Salem, OR  97301-4096

s/Jennifer B. Henning
Jennifer B. Henning

20